# SUPREME COURT.

THOS. KING *vs.* E. B. HUNTLEY.—WRIT OF NE EXEAT REGNO.

A PARTY having been arrested as an absconding debtor, under Section 953 of the Civil Code, and affidavits having been filed both by the defendant and plaintiff, embracing counter allegations, as to the validity of the claim, the Court proceeded to hear evidence in order that it might judge whether, *prima facie*, there was any indebtedness to the plaintiff by the party arrested.

When the writ of *ne exeat regno* is prayed for against a departing debtor, it is not necessary to allege that the defendant is going abroad to avoid payment of the debt, but sufficient to allege that the debtor is about to quit the Kingdom, without leaving any provision for the payment of the debt.

By a strict construction of the terms of the Statute, if he secretes his property, or transfers it to third parties, or is making an effort to remove it out of the jurisdiction, or if the debtor is about to quit the Kingdom, it is a seeking to avoid the payment of the debt, and the Court is empowered by proof of either of these acts to order the arrest and detention of a debtor, and may at its discretion, on the examination of the circumstances of each case, decide whether it is reasonable that security should be given to abide the result of a suit, and pay the amount of such judgment as may be rendered.

The Court will examine, if the party arrested desires it, into the merits of the case, in order that he may not be detained on a groundless claim and for a malicious purpose. Upon such examination the Court will ascertain whether the rights of a party are endangered by his debtor leaving the Kingdom; and if they are, the process of arrest is legitimate and proper.

The Passport Law sustains the above construction of the Statute. (Article 41, Civil Code.)

The writ is a writ of right when the provisions of the Statute are complied with.

ALLEN, C. J.

The plaintiff brought an action against the defendant, claiming of him the amount of a promissory note, bearing date the 2d day of November last past, with interest, which he alleges the defendant executed and delivered to him, and that although often requested, he had refused and neglected to pay ; and the plaintiff, on oath, further averred that the said defendant was about to quit the Kingdom, having made no provision for the payment of said note. Whereupon the plaintiff prayed that the process of arrest and detention might issue against said

defendant, and that he might be detained until he gave bonds to abide the result of this suit, which was allowed. The defendant was thereupon arrested and held in custody, and now comes into Court and moves that the attachment be dissolved, and that he may be discharged from custody. He files an affidavit, in which he avers that he is about to leave the Kingdom, for a few months, in the exercise of his regular business as whaleman, for which purpose he proposes to proceed to the Coast of California in the schooner "Emma Rooke," of which he is first officer ; that he expects to return in the Spring next ensuing, when he intends to pay all legal claims against him ; that he has no intention to avoid or evade his debts. He further alleges that the plaintiff has the control of all the catchings of oil made by the schooner "Maria" during last winter, and in which the defendant has an interest, and which he is informed and believes to be amply sufficient to pay all the legal claims which the plaintiff holds against him. The defendant further alleges, that the plaintiff has not instituted this suit for the purpose of recovering the debt, as set forth in his complaint, but to prevent him from prosecuting his intended voyage, in which he will compete with the whaleship "Harmony," owned by the plaintiff, and in which the plaintiff solicited the defendant to ship for said voyage.

The plaintiff files an affidavit, in which he avers that he has not sufficient means of defendant's in his hands to pay the demands he has against him, and that the defendant has never made such claim previous to this suit, and that he never solicited defendant to ship on board the "Harmony." He further avers that the defendant has no ties in this country to induce his return, that he is aware of.

Evidence was adduced, showing the amount of disbursements of the schooner "Maria" for the whaling voyage to the Coast of California, as referred to in the defendant's affidavit, and also of the receipts from the sale of certain articles belonging to the adventure, and returned in the vessel, and the probable result of the shipment of the oil taken by the schooner "Maria," made to Bremen. Mr. Hackfeld testifies that the oil had been sold in advance of arrival. It appeared further that there were certain other articles of some value remaining unsold. As there

were counter allegations in relation to the validity of the claim, the Court desired to hear evidence, so far at least as to be able to judge whether there was an indebtedness. Both parties introduced such evidence as they thought proper, and it appears, from the accounts stated and the evidence adduced, that the defendant is justly indebted to an amount about equal to that of the note declared on. The Court will take this occasion to say that this amount is not in the nature of an adjudication, for, when the parties present their case to a Court and jury, these proceedings can have no influence or relation, but it became necessary to know whether the plaintiff could make out a *prima facie* case. The Court will further state that the defendant did not present evidence in relation to some material items of the account to which he objected.

In support of the motion, the counsel for the defendant contends, 1st. That the complaint was insufficient in not alleging that the debt was due and unpaid.

The plaintiff follows the form prescribed by statute—he claims of defendant a certain sum of money, according to defendant's note, setting it forth in detail. I understand this claim to be of the amount of the note due and unpaid, and that although often requested to pay the same, he has refused and neglected so to do. The counsel contends it is sufficient for a declaration, but not for an arrest. Under the statute, the party filing a complaint, and before process can issue upon it, must make oath to its truth, that he claims a certain amount according to the tenor of a certain instrument. Is not the oath a mockery, unless the construction obtains that the amount as set forth in the note or contract he claims as due and owing him? The form being prescribed by the statute, must be regarded by the Court, and so far as precedents have been consulted, they sustain this construction.

It is further contended that it is not alleged that the defendant is about to leave the Kingdom with the fraudulent intent to evade the payment of the debt, and that an intended departure to a foreign country in pursuit of one's legitimate business does not subject one to the liabilities of the statute, and that it must be with the intent to defraud. In the case of Taubuson *vs.* Harrison, (8 Vesey, 32,) it appeared that the plaintiff, an ex-

ecutor, moved that a writ of *ne exeat regno* might issue, to restrain the defendant, his co-executor, from quitting the Kingdom. The affidavit stated that the defendant was the captain of a ship trading to the Island of Barbadoes, and that he had collected a great part of the property as co-executor ; that he is going abroad, and the debt will be wholly lost or greatly endangered. Lord Chancellor Eldon expressed some doubts whether the affidavit was sufficient, not alleging that he was going abroad to avoid the demand. His Lordship observed, "that this is a high prerogative writ, and is applied to cases of private right, always with great caution and jealousy, and that in this instance the defendant was only going abroad in the exercise of his usual business," but upon the examination of the precedents, it was found that since the time of Lord Hardwick it had been sufficient if the affidavit alleges that the debt will be in danger of being lost, and the Court ruled that it was not necessary to allege that the purpose of going abroad was to avoid the demand, and made the order.

In this case the allegation is that the defendant is about to quit the Kingdom, having made no provision for the payment of said note. Every country has its own peculiar legislation for the collection of debts and the arrest of debtors for non payment. In the case referred to, Lord Eldon, after examination, did not regard it a sufficient answer that the defendant was going abroad in the exercise of his usual business. It is apparent that a debt is in more jeopardy, if the debtor goes abroad leaving no property, than if he remains at home in his regular pursuits. At a period in the history of English jurisprudence the writ of *ne exeat regno* was regarded as a high prerogative writ, and was issued with greater caution than at present, and this for many reasons—at that time an arrest and imprisonment for the non-payment of a debt, without assigning any special reason, was legal. Our statute is far more liberal, and prevents this, unless the party can prove certain acts on the part of the debtor, so that under the more liberal legislation of the present day this is as much a writ of right as any other, when the conditions of the statute are complied with. It is the ordinary process of Courts of Equity. The statute under which this arrest is made prescribes that it shall be law-

Thos. King *v.* E. B. Huntley.

ful for the Court to order the arrest of a debtor upon a complaint verified and duly filed that the defendant has contracted a debt in a fraudulent manner, or seeks to evade the payment of any debt or any other liability due to such plaintiff by secreting his property, or by transferring, or intending to transfer the same to any third party, or is about to remove the same out of the jurisdiction of such Court, or is about to quit the Kingdom. The statute very clearly regards, in a strict construction of its terms, that if one secretes his property or transfers it to third parties, or is making an effort to remove it out of the jurisdiction, or if the debtor is about to quit the Kingdom, that it is a seeking to evade the payment of the debt, and the Court is empowered by proof of either of these acts to order the arrest and detention of a debtor. It is not an imperative duty—the Court has the discretion, on the examintion of the circumstances of each case, to decide whether it is reasonable that security should be given to abide the result of a suit, and pay the amount of such judgment as may be rendered. The Court will carefully examine, if the person arrested desires it, into the merits of the case, so that he may not be detained on a groundless claim, and for a malicious purpose. There would not be the same reason for arresting a merchant in full business, and in good credit, who proposes to go to San Franciscoo to replenish his stock, as there is for arresting a person who leaves the Kingdom without leaving any property to respond to a judgment which may be recorded against him. The examination of a case will enable the Court to judge whether the rights of a party are endangered by his debtor leaving the Kingdom, and if they are, this is a proper and legitimate process. The object and intent of the law is very clear that the subjects and residents of the Kingdom shall not be compelled to send abroad to collect their debts contracted here, and especially in the instance of those men whose pursuits attract them from one country to another. In this case each party is sanguine of the justice of his position, and each has a right to a trial by jury, and while the defendant insists on this mode of settling the controversy, he should not absent himself without leaving property or security so that if a judgment is obtained against him there will be means of

satisfying it. It would be doing injustice to creditors here not to afford them at least this redress. Under our laws a very great liberty is extended to debtors, but it should be limited to the boundaries of the Kingdom. It would be virtually a denial of justice to compel our people to seek redress in foreign countries. Here the debt is contracted, here the testimony is, and here is the administration of the law under which the contract was made—and would it not be a virtual denial of justice to compel our people to go to a foreign country to employ counsel, take out commissions to take testimony, and inform the Courts abroad of the laws under which the contract was made, and submit their case to a foreign tribunal? The passport law sustains this construction. It is not an oppressive case for the defendant to give the necessary security ; if he is right in his view of the accounts his sureties will have nothing to pay—if he is wrong he should pay whatever balance is due. The plaintiff has given a bond to indemnify him from all injury and damage arising from the arrest, if he does not sustain his suit. The Court sees no foundation for the allegation that the plaintiff has instituted this suit to prevent the defendant from prosecuting his intended voyage to the coast of California. His management of the business, especially after the arrival of the " Maria," and her catchings of oil, has been especially regardful of the interest of his associates. By the terms of the contract, it was not incumbent on him to pay the debts incurred in the enterprise, such as seamen's lays, etc., etc., the oil might have been sold, and if there was a sacrifice, the parties must equally bear it. Instead of resorting to this summary process, the plaintiff paid all the debts and shipped the oil to Bremen, expecting a better price than this market offered, all which would be for their mutual benefit. His offers to take the property remaining unsold are certainly fair and liberal. In view of all the circumstances of the case, I can see no reason for this harsh allegation against the plaintiff.

Motion overruled.

Mr. Harris, for plaintiff.

Mr. Montgomery, for defendant.