# APPENDIX A.

## IN THE MATTER OF THE PETITION OF G. H. RUTT-MANN, FOR A WRIT OF HABEAS CORPUS.

### At Chambers, Before Chief Justice Judd.

Submitted November 6, 1895.    Decided November 8, 1895.

#### OPINION OF CHIEF JUSTICE JUDD.

One G. H. Ruttmann was arrested on the 25th October last on the warrant of the District Magistrate of Honolulu, upon a complaint by T. E. Krouse, alleging that the said Ruttmann owed him some $300. for board and lodging and that he, Ruttmann, was about to depart from the Republic without paying the said indebtedness or making sufficient provision for the payment of the same. On the 30th October the District Magistrate rendered judgment for the amount claimed, commissions and costs, and found as proved by the evidence the allegation that Ruttmann was about to depart from the Republic without paying the said indebtedness, &c. The court therefore declined to order the discharge of Ruttmann and he remained in custody. On the 5th November a writ of habeas corpus was sued out before me by the said Ruttmann, the petitioner alleging that he is unlawfully restrained of his liberty and imprisoned by the marshal by virtue of the order of the District Magistrate, also setting out the above facts as to the suit and judgment against him and averring that he has no means of satisfying the same

and is unable to obtain sureties that will satisfy the said judgment; and claims that there is no law authorizing his restraint. The return of the marshal admits the custody of the petitioner and justifies it under the order of the District Magistrate as above set forth, and submits to the further order of this court.

The petitioner contends that the law or so much of it as authorizes the arrest and imprisonment of a debtor until he shall have entered into security for the payment of the judgment, is unconstitutional.

It must be assumed as true that the petitioner is unable to pay the judgment or to secure its payment. He is therefore detained and imprisoned until he pays, as long as the judgment creditor pays to the officer having the petitioner in custody the sum of fifty cents per diem for his support. His imprisonment is indefinite as to duration.

The law in question was taken into the Civil Code of 1859, having been first enacted in 1852. It has been repeatedly put in operation during these years, but there are but two reported cases where it has been discussed. The first is *King v. Huntley*, 2 Haw. 457 (1861), where Chief Justice Allen held that proof that the debtor was about to quit the kingdom was a seeking to evade the payment of his debts, and to refuse to detain the defendant would compel the plaintiff to sue him in a foreign court and that it was discretionary with the court to hold the defendant to giving security for the amount of the judgment which he obtained here. The learned Judge discusses the statute very much as if it was the authority for the writ of Ne Exeat, which is clearly a very different process and to be invoked for different purposes. The second case is *Yuen Chock v. Chung Hoy*, 8 Haw. R. 161, where the Supreme Court held that the statute did not authorize the arrest of the fraudulent debtor after judgment. We held in that case that the object of the law was to secure the presence of the defendant in a civil action. I am still of that opinion. This is what is known in the law as an arrest on mesne process, the object of which is to compel the defendant to appear in the cause. See 1 Am. & Eng. Encyc. of Law, p.

720. In the case before me the object of the arrest was satisfied; the defendant was brought before the court and judgment was obtained against him. He is now alleged to be held, as it were, in execution; that is, as if on a *Ca. Sa.* or writ of *capias ad satisficiendum.* I have a case in 81 N. Y. 43, People *ex rel. Roberts v. Bowe,* where it is held that where a judgment has been reversed the relators who were held in confinement under the execution could not be held under the order of arrest but were entitled to their discharge. It cites approvingly Ch. Kent in *Wood v. Dwight,* 7 Johns. Ch. 295. "When process is once discharged and dead, it is gone forever and it can never be revived except by a new exercise of judicial power."

Now as the arrest in this case was, as I think it was, on mesne process, it is discharged by the judgment and no new order has been taken out to hold the petitioner's body for the debt. But I do not wish to decide this case on technical grounds. The statute neither as first enacted in 1852 nor as reenacted in 1859 when the two sections following Section 953 were added (which provide for the support of the prisoner) contain provisions for his final discharge if unable to pay the judgment. His imprisonment may therefore be for life. Other jurisdictions have provisions of the following character. In Massachusetts the defendant in execution may obtain his release by taking the "Poor Debtor's" oath. In New York an assignment of all his property will procure his discharge. In this Republic there is no provision for a poor man, utterly unable to pay a judgment, obtaining his release so long as his creditor pays for his support in jail. This is imprisonment for debt, which though not expressly prohibited by our constitution is contrary to the spirit of its Article 6, which secures a person from being subject to punishment for any offense except upon due and legal conviction upon a charge describing the offense. It is also repugnant to Article 8, where life, liberty and property cannot be taken without due process of law; and to Article 9, where involuntary servitude except for crime is prohibited. The strongest argument in my mind for holding the detention in prison of a debtor

upon the sole allegation that he was about to quit the Republic to be unconstitutional, is, that the intent to quit the Republic is not a fraud nor a crime. This is the sole allegation upon which the arrest was asked for. The complaint does not allege that the debt was contracted in a fraudulent manner, nor that the defendant seeks to evade the payment of a debt by secreting his property, or by transferring it to some other person, or by removing it out of the jurisdiction of the court. Where such allegations are made imprisonment might be justified as punishment for the fraud. Chief Justice Allen in *King v. Huntley, supra,* felt obliged to hold that a magistrate should inquire into the circumstances of the case and ascertain if the object of the defendant's leaving the kingdom was to evade the payment of the debt. This implies that if the intention of the debtor was not to evade the payment of his debt, the arrest should be refused. In *Stewart v. Levy,* 36 Cal. 159, it was held that under the code the right to imprison for debt on final process in cases of *fraud* is sanctioned. The court derives this by implication from a provision of the code, Sec. 72, Practice Act, which has reference to arrest on mesne process and not final process. The court say, "it would be an absurd provision of the law to authorize the arrest of a party being accused of a fraudulent act, and to require his discharge upon being found guilty." But as fraud involves moral turptitude, imprisonment is justified as a punishment for it as well as a means for enforcing payment of the debt.

All that is essential for me to hold in this case is that imprisonment for debt, where no fraud is alleged or shown, and where judgment has been obtained and the defendant is unable to discharge or secure the same, is illegal, and so much of the statute as authorizes such imprisonment is contrary to the Constitution, and I so hold.

Let the prisoner be discharged.

*A. S. Hartwell* and *A. G. M. Robertson* for petitioner.

*A. S. Humphreys* for the marshal respondent.